# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN ANDERJASKA, CHUNGYAO CHEN, TEENA COLEBROOK, JOEL GRIFFITH, ART HEINEMAN, CALVIN WILLIAMS, CHARLES WITTE, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>      v.<br><br>BANK OF AMERICA, N.A., CAPITAL ONE, N.A., CITIBANK, N.A., J.P. MORGAN CHASE, N.A., WELLS FARGO BANK, N.A.,<br><br>                Defendants. | Case No. _____<br><br>Removed from the Supreme Court of the State of New York, New York County<br><br>Index No. 151484/2019<br><br>**NOTICE OF REMOVAL** |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant JPMorgan Chase Bank, N.A. (erroneously sued as "J.P. Morgan Chase, N.A.") ("Chase"), by and through its undersigned counsel, hereby removes the above-captioned action from the Supreme Court of the State of New York, New York County, to the United States District Court for the Southern District of New York pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) *et seq.*; the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 77 *et seq.*; and the Edge Act, 12 U.S.C. § 611 *et seq.* As set forth more fully below, this Court has jurisdiction over this action pursuant to CAFA because Plaintiffs' putative class action Complaint commenced litigation that could originally have been filed in this Court pursuant to 28 U.S.C. § 1332(d). This Court also has jurisdiction over this action pursuant to SLUSA, because the lawsuit is a "covered class action" within the meaning of SLUSA, and because the Complaint concerns allegedly fraudulent conduct in connection with transactions involving "covered securit[ies]." 15 U.S.C. §§ 77p(f)(2)(A)(i)(I), 77p(f)(3). As a result, SLUSA also preempts Plaintiffs' state law claims. *See id.* § 78bb(f)(2). Lastly, this Court also has jurisdiction over this action pursuant to the Edge Act, because the Complaint raises civil claims arising out of "transactions involving international or foreign banking" against federally chartered national banking associations. *See* 12 U.S.C. § 632.

As grounds for removal, Chase states the following:

1.      On or about February 11, 2019, Plaintiffs filed this action as a putative class action in the Supreme Court of the State of New York, New York County. The action bears index number 151484/2019. A copy of "all process, pleadings, and orders" received by Chase is attached hereto as Exhibit A.

2. Defendants Chase and Wells Fargo Bank, N.A. were served true copies of the Summons and Verified Complaint on or around March 6, 2019. Defendants Bank of America, N.A. and Capital One, N.A. were served true copies of the Summons and Verified Complaint on or around March 12, 2019. Defendant Citibank, N.A. was served a true copy of the Summons and Verified Complaint on or around March 21, 2019. Affidavits of service for all Defendants were returned on March 13, 2019.

3. Removal under CAFA and SLUSA is timely because this Notice of Removal has been filed within thirty days after service on Chase was effected (*i.e.*, on March 6, 2019). 28 U.S.C. § 1446(b). Removal under the Edge Act is timely because this Notice of Removal has been filed before trial of Plaintiffs' action. *See* 12 U.S.C. § 632.

4. Defendants Bank of America, N.A., Capital One, N.A., Citibank, N.A., and Wells Fargo Bank, N.A. (collectively with Chase, "Defendants") consent to the removal of this action. Attached hereto as Exhibit B is the written consent of Bank of America, N.A. Attached hereto as Exhibit C is the written consent of Capital One, N.A. Attached hereto as Exhibit D is the written consent of Citibank, N.A. Attached hereto as Exhibit E is the written consent of Wells Fargo Bank, N.A.

5. In accordance with 28 U.S.C. § 1446(d), Chase will provide a copy of this Notice of Removal to the clerk of the Supreme Court of the State of New York, New York County. Also, in accordance with 28 U.S.C. § 1446(d), Chase will serve written notice of the filing of this Notice of Removal upon Plaintiffs through their attorney of record, Jonathan E. Neuman, Esq., 176-25 Union Turnpike, Suite 230, Fresh Meadows, New York, 11366.

6. No statement or omission in this Notice of Removal shall be deemed a waiver of any defense or admission of any of the allegations made or damages sought in the Complaint.

## BACKGROUND

7.      According to the Complaint, Plaintiffs are credit card and bank deposit account holders with Defendants. Compl. ¶¶ 132, 136, 139, 143, 147, 156, 160. The Complaint alleges that Plaintiffs transferred money from their credit card and bank accounts with Defendants to various offshore binary options trading platforms (collectively, the "Platforms"),[1] which made false guarantees of investment returns or profits. *Id.* ¶¶ 14-93. Grey Mountain Management ("GMM"), Worldwide Tech, Nelstone Services Limited ("Nelstone") and other associated entities (collectively, the "Payment Processors") allegedly processed these transfers. *Id.* ¶¶ 94-129. Plaintiffs allege that the Platforms tricked investors into believing that their initial investments were successful to encourage them to transfer more money. *Id.* ¶¶ 38-60. When Plaintiffs attempted to withdraw their investments and supposed earnings, however, the Platforms cut off contact and disappeared with all (or nearly all) of Plaintiffs' money. *Id.* Plaintiffs allege that they filed complaints and disputes against the Platforms with Defendants, requesting that Defendants "chargeback" the payments that Plaintiffs made to the Platforms and/or the Payment Processors. *See, e.g.*, *id.* ¶ 141. Plaintiffs allege that, given the volume of customer complaints and disputes, Defendants knew, or should have known, about the alleged fraudulent binary options trading scheme and should have warned Plaintiffs not to invest in the Platforms. *See, e.g.*, *id.* ¶ 173.

8.      Based on these allegations, Plaintiffs assert three common law causes of action against Defendants: (1) negligence; (2) aiding and abetting; and (3) fraudulent concealment. *Id.*

---

[1] The Complaint identifies numerous specific binary options trading platforms, including, among others, "BeeOptions" and "Glenridge Capital." Compl. ¶ 99; *see also, e.g.*, *id.* ¶ 90.

¶¶ 165-98.  Plaintiffs seek, among other relief, damages incurred due to Defendants' alleged failure to warn.  *Id.* at 27.  Plaintiffs also seek certification of a putative class consisting of all "individuals whose payments were sent to GMM, Worldwide Tech, Nelstone, or any entity associated with GMM," such as the Platforms.  *Id.* ¶ 164.

9. Plaintiffs' action is removable to this Court on three independent grounds, under CAFA, SLUSA, and the Edge Act.

## REMOVAL IS PROPER UNDER CAFA

10. CAFA provides for federal jurisdiction over putative class actions where:  (1) the amount in controversy exceeds $5 million, exclusive of interests and costs; (2) the number of putative class members exceeds 100 people; and (3) there is minimal diversity (*i.e.*, at least one member of the putative class and one defendant are citizens of different states).  28 U.S.C. §§ 1332(d)(1)(B), (d)(2)(A), (d)(5)(B), (d)(6).  Plaintiffs' putative class action satisfies these jurisdictional requirements.

### A. The Amount in Controversy Exceeds $5 Million

11. To determine whether a putative class action meets CAFA's $5 million amount-in-controversy requirement, "the claims of the individual class members shall be aggregated," and "those 'class members' include 'persons (named or unnamed) who fall within the definition of the ***proposed*** or certified class.'"  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(1)(D), (d)(6)).  Though courts "generally evaluate jurisdictional facts . . . on the basis of the pleadings," *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56-57 (2d Cir. 2006), "[w]here the pleadings are inconclusive, courts may look to other evidence in the record," *Fields v. Sony Corp. of Am.*, 2014 WL 3877431, at *2 (S.D.N.Y. Aug. 4, 2014).  Additionally, to sustain its burden on removal, the defendant need only demonstrate a

5

"reasonable probability" that the amount in controversy exceeds $5 million. *Blockbuster*, 472 F.3d at 59. Defendants here have more than made that showing.

12. Plaintiffs allege that "all" of the Platforms identified in the Complaint were fraudulent, Compl. ¶ 106, and seek to certify a class of all "individuals whose payments [to these Platforms] were sent to GMM, Worldwide Tech, Nelstone, or any entity associated with GMM," *id.* ¶ 164. Among other relief, Plaintiffs seek compensatory and punitive damages, pre-judgment and post-judgment interest, and attorney's fees and costs. *Id.* at 27.

13. The amount-in-controversy in Plaintiffs' putative class action significantly exceeds $5 million.[2] Plaintiffs purport to sue on behalf of "***tens of thousands*** of defrauded investors" and seek damages for all payments processed by GMM, Worldwide Tech, Nelstone, and entities associated with GMM. *Id.* ¶ 164 (emphasis added). The named Plaintiffs alone allege that they transferred approximately $992,780 to GMM and its associated entities, for an average amount of approximately $141,825 per named plaintiff. *Id.* ¶¶ 132, 136, 139, 143, 147, 156, 160. Extrapolating Plaintiffs' individual damages calculations over a putative class consisting of "tens of thousands" of class members, *id.* ¶ 164, the amount in controversy would well exceed $5 million.

---

[2] Chase denies Plaintiffs' allegations, denies that Plaintiffs are entitled to any recovery whatsoever, and further denies that any class could be certified under Federal Rule of Civil Procedure 23 or any other basis. The question at issue for removal purposes, however, is not whether Plaintiffs may establish liability or prove damages on their putative class action claims, but whether the amount in controversy exceeds CAFA's jurisdictional requirements. *Cf. Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 68 (2d Cir. 2012) ("[T]he amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." (internal quotation marks omitted)).

14. Chase's business records support this conclusion. They reflect that, from January 1, 2013 to March 14, 2019, more than 1,000 Chase customers made a payment via a wire or debit transfer to GMM, BeeOptions, or Glenridge Capital, and the aggregate dollar amount of those payments exceeded $10 million.[3] Declaration of Rex A. Werner in Support of Notice of Removal ("Werner Decl.") at ¶ 3 (attached hereto as Exhibit F).

15. Plaintiffs' putative class action therefore satisfies CAFA's amount-in-controversy requirement.

B. **The Class Consists of Over 100 Class Members**

16. Plaintiffs' putative class consists of all "individuals whose payments were sent to GMM, Worldwide Tech, Nelstone, or any other entity associated with GMM." Compl. ¶ 164. This putative class significantly exceeds 100 class members. *See* 28 U.S.C. § 1332(d)(5)(B) (providing that CAFA jurisdiction shall not apply when "the number of members of all proposed plaintiff classes in the aggregate is less than 100").

17. As discussed *supra* at ¶¶ 13-14, Plaintiffs themselves allege that the putative class consists of "***tens of thousands*** of defrauded investors," Compl. ¶ 164, and Chase's business records reflect that, from January 1, 2013 to March 14, 2019, more than 1,000 Chase customers made a payment via wire or debit to GMM and other associated entities.[4] Werner Decl. ¶ 3.

---

[3] This figure undercounts the aggregate dollar value of payments made by the putative class, in three respects. ***First***, it excludes payments from Chase customers through means other than wire or debit transfer (*e.g.*, via check or credit card). ***Second***, it omits payments from Chase customers to GMM-associated entities other than GMM, Glenridge Capital, or BeeOptions. *See, e.g.*, Compl. ¶ 99 (listing various binary options trading platforms who used GMM or a GMM-affiliate as their payment processor). ***Lastly***, it does not include payments made by the other four Defendants' customers.

[4] As with CAFA's amount-in-controversy requirement, this figure undercounts the total number of putative class members. As discussed *supra* at n.3, this figure does not reflect Chase

### C. Diversity of Citizenship Exists as Required by CAFA

18. Finally, Plaintiffs' putative class action satisfies CAFA's diversity requirement. *See* 28 U.S.C. § 1332(d)(2)(A) (requiring that at least one plaintiff be a citizen of a state different from any defendant).

19. Plaintiffs are residents of Maryland, California, Washington, Wisconsin, and New Mexico, respectively, and they have not alleged any alternative states of residence or an intent to stay indefinitely in such states. Compl. ¶¶ 2-8. Accordingly, Plaintiffs are domiciled in the states in which they reside. *See d'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 886 F.3d 216, 226 n.8 (2d Cir. 2018) ("[I]n the diversity jurisdiction context, an individual's citizenship is determined by his domicile, which is the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the ***intention*** of returning." (internal quotation marks, alterations, and ellipsis omitted)).

20. Chase is a national banking association with its main office in Columbus, Ohio, as designated in its articles of association.[5] Werner Decl. ¶ 1; *see also* JPMorgan Chase Bank, N.A., Articles of Association (Form T-1, Ex. 99.1) (Dec. 3, 2004), available at https://www.sec.gov/Archives/edgar/data/1062336/000119312504207055/dex991.htm (last

---

customers who made payments through means other than wire or debit transfer, or to GMM-associated entities other than GMM, Glenridge Capital, or BeeOptions. Nor does it reflect the number of customers of the other four Defendants who made payments to GMM-associated entities.

[5] A national banking association is a federally chartered corporation authorized to "carry on the business of banking." 12 U.S.C. § 24. When a national banking association is formed, the "place where its operations of discount and deposit are to be carried on" (*i.e.*, the bank's "main office") must be specified in the bank's organization certificate and articles of association. *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 n.1 (2006) (internal quotation marks omitted).

visited April 3, 2019) (providing that Chase's "main office . . . shall be in the City of Columbus, County of Franklin, State of Ohio").[6] For jurisdictional purposes, a national banking association is a citizen of the state listed in its articles of association as its "main office." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 219 (2d Cir. 2016). Therefore, Chase is a citizen of Ohio.

21. Because Plaintiffs are citizens of Maryland, California, Washington, Wisconsin, and New Mexico, respectively, and Chase is a citizen of Ohio, at least one class member and one defendant are diverse from one another, as required by CAFA.

### D. None of the Exceptions to CAFA Applies to this Action

22. CAFA contains a number of exceptions that, where applicable, prevent the Court from exercising jurisdiction over a putative class action, even where that action meets CAFA's threshold requirements triggering diversity jurisdiction.

23. Under CAFA's "Local Controversy Exception," an action is not removable if (1) more than two-thirds of the class are citizens of the state in which the action was filed; (2) at least one defendant whose conduct forms a significant basis of the claims is a citizen of the state in which the action was filed; (3) the principal injuries occurred in the state where the action was filed; and (4) no class action has been filed alleging the same claims against any of the defendants in the last three years. 28 U.S.C. § 1332(d)(4)(A). This exception is not applicable here because no Plaintiff is resident or domiciled in New York, *see supra* at ¶ 19, and no Plaintiff is otherwise alleged to have been injured in New York, the state in which this action was filed. *See, e.g.*, Compl. ¶¶ 2-8 (allegations regarding Plaintiffs' residences and domiciles), 180, 190,

---

[6] The Court may properly consider public documents on file with the SEC. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

198 (allegations regarding Plaintiffs' alleged injuries); *see also* Ex. A (Summons) (designating New York County as venue for trial because New York County is "the address of multiple Defendants").

24. Under CAFA's "Home State Exception," an action is not removable if at least two-thirds of class members and all primary defendants are citizens of the state in which the action was filed. 28 U.S.C. § 1332(d)(4)(B). This exception is not applicable here because not all primary defendants are citizens of New York, the state in which the action was filed. *See supra* at ¶ 20 (establishing Chase, one of five named Defendants, is not a citizen of New York for CAFA purposes). Also, none of the named Plaintiffs is a citizen of New York, indicating that it is unlikely that more than two-thirds of putative class members are citizens of New York.

## REMOVAL IS PROPER UNDER SLUSA

25. This Court also has jurisdiction over this action pursuant to SLUSA, because Plaintiffs' action is a "covered class action" that alleges misrepresentations or omissions of material facts and manipulative or deceptive conduct in connection with transactions involving "covered securit[ies]." 15 U.S.C. §§ 77p(c), 78bb(f)(2). Further, SLUSA preempts Plaintiffs' causes of action arising under state law.

26. SLUSA's removal provision provides:

> Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable by the Federal district court for the district in which the action is pending, and shall be subject to subsection (b).

*Id.* § 77p(c); *see also id.* § 78bb(f)(2).

27. SLUSA's preemption provision, in turn, provides:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal
10

> court by any private party alleging—(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

*Id.* § 77p(b); *see also id.* § 78bb(f)(1).

28. Thus, to establish removal and preemption under SLUSA, a defendant must show that the action (1) is a "covered class action"; (2) based on statutory or common law; (3) alleging that defendants made a "misrepresentation or omission of a material fact" or "used or employed any manipulative device or contrivance" "in connection with" (4) a "covered security." 15 U.S.C. §§ 77p(b)-(c), 78bb(f); *see also O'Donnell v. AXA Equitable Life Ins. Co.*, 887 F.3d 124, 129 (2d Cir. 2018).

29. Plaintiffs' action satisfies these four elements.

**A.    Plaintiffs' Action is a "Covered Class Action"**

30. Under SLUSA, the definition of "covered class action" includes any lawsuit in which:

> (I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or
>
> (II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members.

15 U.S.C. §§ 77p(f)(2)(A)(i), 78bb(f)(5)(B)(i). In short, for SLUSA purposes, "'[a] covered class action is a lawsuit in which damages are sought on behalf of more than [fifty] people.'"

*Fisher v. Kanas*, 487 F. Supp. 2d 270, 276 (E.D.N.Y. 2007) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 83 (2006)).

31.     As discussed *supra* at ¶¶ 16-17, Plaintiffs' putative class significantly exceeds 50 class members. Further, the Complaint does not distinguish between Plaintiffs and other putative class members with regard to questions of law or fact; rather, the Complaint itself alleges that "common questions of law and fact exist as to all members of the class, and predominate over the questions affecting only individual members." Compl. ¶ 164; *see also id.* ¶ 167 ("Defendants had notice and/or knowledge that its customers' funds were being diverted and misappropriated . . . , all with the ***same basic facts*** of customers depositing money with these GMM-affiliated entities and then not being able to withdraw their money." (emphasis added)). Thus, there appear to be issues of law or fact common to all Plaintiffs and putative class members, without reference to issues of individualized reliance.

32.     Because Plaintiffs' putative class includes more than 50 class members, and there appear to be issues of law or fact common to all class members without reference to issues of individualized reliance, the present action is a "covered class action" under SLUSA.

### B.     The Options Trading Contracts Are "Covered Securities"

33.     Under SLUSA, a "covered security" is generally any security "that satisfies the standards for a covered security specified in paragraph (1) or (2) of [15 U.S.C. § 77r(b)] at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred." 15 U.S.C. § 77p(f)(3); *id.* 78bb(f)(5)(E). Section 77r(b), in turn, specifies that a "covered security" must either be listed on, or be authorized to be listed on, a national securities exchange. 15 U.S.C. § 77r(b); *see also id.* at § 78bb(f).

34. Plaintiffs' allegations in the Complaint establish that the alleged fraudulent binary options trading scheme at issue here involves "covered securities" for two reasons. **First**, the binary options contracts themselves qualify as "covered securities" because, as the Complaint alleges, binary options contracts akin to those at issue here can be, and are, listed on "registered exchanges or traded on a designated contract market that [is] subject to oversight by United States regulators such as [the U.S. Commodity Futures Trading Commission] or [the U.S. Securities and Exchange Commission]." Compl. ¶ 22. **Second**, options contracts like those at issue here qualify as "covered securit[ies]" so long as the underlying securities that are the subject of those contracts qualify as "covered securit[ies]." *See Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129-30 (9th Cir. 2002), *abrogated on other grounds by Proctor v. Vishay Intertech, Inc.*, 584 F.3d 1208 (9th Cir. 2009). Plaintiffs allege that the fraudulent binary options contracts they purchased were tied to the performance of stock in publicly-traded companies. Compl. ¶¶ 27-28.

    **C.**    **The Complaint Alleges a Misrepresentation or Omission of a Material Fact and the Use of a Manipulative or Deceptive Device in Connection with Transactions Involving a Covered Security**

        *i.*    *Misrepresentation or omission of a material fact and manipulative or deceptive conduct*

35. To trigger SLUSA, a complaint must allege either "(1) an explicit claim of fraud or misrepresentation (*e.g.*, common law fraud, negligent misrepresentation, or fraudulent inducement), or (2) other garden-variety state law claims that sound in fraud." *Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*, 341 F. Supp. 2d 258, 261 (S.D.N.Y. 2004). "A claim sounds in fraud when, although not an essential element of the claim, the plaintiff alleges fraud as an integral part of the conduct giving rise to the claim." *Id.* at 269. Thus, "SLUSA's

preemptive reach extends to complaints framed in terms of causes of action other than fraud." *Barron v. Igolnikov*, 2010 WL 882890, at *4 (S.D.N.Y. Mar. 10, 2010). Plaintiffs' claims satisfy this requirement.

36. First, Plaintiffs' second and third causes of action for aiding and abetting and fraudulent concealment are explicit claims of fraud and/or misrepresentation. *See* Compl. ¶¶ 181-90 (aiding and abetting), 191-98 (fraudulent concealment).

37. Second, Plaintiffs' sole remaining claim—the first cause of action for negligence—necessarily sounds in fraud, because Plaintiffs' allegations make clear that the alleged fraudulent binary options trading scheme is integral to the conduct giving rise to this claim. *See id.* ¶¶ 165-80. For example, in support of their negligence claim, Plaintiffs repeat their allegations that Defendants knew about, or consciously ignored, the alleged fraud and misrepresentations by the Platforms and their Payment Processors, and failed to warn Plaintiffs about the scheme. *See, e.g.*, *id.* ¶¶ 173-74 ("Due to customer complaints and attempted chargebacks, Defendants were also made aware that GMM and its affiliated entities were involved in a fraudulent scheme to defraud U.S. citizens and the Defendants' customers . . . . Having such knowledge, Defendants were under a duty to make reasonable inquiry and endeavor to prevent the fraud and/or misappropriation."). Because the "factual allegations underlying conduct covered by SLUSA are one and the same as those alleged in support of" the negligence claim, it also comes under SLUSA. *Montoya v. New York State United Teachers*, 754 F. Supp. 2d 466, 473 (E.D.N.Y. 2010).

38. In short, the Complaint is replete with allegations that the Platforms and their Payment Processors committed fraud, made fraudulent and deceptive misrepresentations and omissions, and engaged in manipulative conduct, and that Defendants allegedly aided and

abetted that fraud by fraudulently concealing and failing to disclose to Plaintiffs the alleged fraudulent binary options scheme.  *See generally* Compl.  These allegations satisfy SLUSA.

### ii. *In connection with transactions involving a covered security*

39. "Any covered class action brought in any State court ***involving a covered security*** . . . shall be removable to [federal district court]."  15 U.S.C. § 77p(c) (emphasis added).  Significantly, to remove an action under SLUSA, "it is not necessary that the purchase or sale [of a covered security] actually transpired; claims based on the alleged failure to buy or sell covered securities fall squarely within SLUSA's ambit."  *Barron*, 2010 WL 882890, at *4.  In other words, "the fact that covered securities were not actually purchased or sold does not compel the conclusion that no covered securities were at issue."  *Marchak v. JPMorgan Chase & Co.*, 84 F. Supp. 3d 197, 209 (E.D.N.Y. 2015) (citing *In re Herald, Primeo & Thema,* 753 F.3d 110, 113 (2d Cir. 2014) (per curiam); *Instituto De Prevision Militar v. Merrill Lynch,* 546 F.3d 1340, 1352 (11th Cir. 2008)).  Thus, a scheme need only reference "promised transactions in securities" to qualify for SLUSA removal.  *Marchak*, 753 F.3d  at 210.

40. Throughout the Complaint, Plaintiffs allege that Defendants knew about, or consciously ignored, a fraudulent securities fraud scheme in which their customers were allegedly manipulated into purchasing covered securities, *i.e.*, binary options contracts, the subject of which included stock in publicly-traded companies.  *See generally* Compl.  Thus, as explained *supra* at ¶¶ 33-34, the wrongful conduct allegedly carried out by Defendants necessarily involved "covered securities."

### D. **Plaintiffs' State Common Law Causes of Action Are Preempted by SLUSA**

41.     "If a state class action satisfies all of the SLUSA criteria, the defendant may remove it to federal district court and the district court must dismiss [plaintiff's state law claims]." *Fisher*, 487 F. Supp. 2d at 276.

42.     For the reasons stated, this action meets all of SLUSA requirements. Accordingly, Plaintiffs' state law claims for negligence, aiding and abetting, and fraudulent concealment, Compl. ¶¶ 165-98, are preempted and must be dismissed.

## REMOVAL IS PROPER UNDER THE EDGE ACT

43.     In addition to CAFA and SLUSA, this Court also has jurisdiction over this action under the Edge Act, because the Complaint asserts civil claims against federally chartered national banking associations that arise out of offshore banking transactions. *See Am. Int'l Group, Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 778 (2d Cir. 2013) ("*AIG*"). The Edge Act provides federal courts with original jurisdiction over:

> [A]ll suits of a civil nature . . . to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries.

12 U.S.C. § 632.

44.     Thus, to establish removal under the Edge Act: (1) the lawsuit must be civil; (2) a federally chartered corporation must be a party to the suit; and (3) the suit must "aris[e] out of" an "offshore banking transaction." *AIG*, 712 F.3d at 780 (internal quotation marks omitted); *see also Wilson v. Dantas*, 746 F.3d 530, 536 (2d Cir. 2014). Plaintiffs' action satisfies these three elements.

45. First, because Plaintiffs assert three common law causes of action, the action is civil in nature.  Compl. ¶¶ 165-98.

46. Second, Plaintiffs expressly allege that each Defendant is "a national banking association organized under the laws of the United States."  *See id.* ¶¶ 9-13; *see also supra* at ¶ 20 (establishing that Chase is a federally chartered national banking association).  Defendants therefore qualify as "corporation[s] organized under the laws of the United States" for purposes of Edge Act removal.  *See Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 213-15 (S.D.N.Y. 2005) (finding that Defendant Bank of America, N.A., as a federally chartered national banking association, is a "corporation organized under the laws of the United States" for Edge Act purposes).

47. Lastly, Plaintiffs' claims arise "out of transactions involving international or foreign banking."  12 U.S.C. § 632.  To satisfy this element, a defendant must show that the plaintiff's claims "arise out of an offshore banking or financial transaction of [the] federally chartered corporation [named as defendant]."  *AIG*, 712 F.3d at 784.  To satisfy the Edge Act, however, the transaction need not "be central to [the plaintiff's] claim."  *Luby's Fuddruckers Restaurants, LLC v. VISA, Inc.*, 342 F. Supp. 3d 306, 318 (E.D.N.Y. 2018).  Rather, the defendant need only show that plaintiff's claims arise out of "transactions ***involving*** foreign banking," and not that the claim "arise[s] out of the foreign transaction" itself.  *Id.* (emphasis added).

48. Plaintiffs here allege numerous "transactions involving foreign banking" that are central to their claims because all of Plaintiffs' claims arise out of the alleged fraudulent transfer of funds from bank and credit card accounts they maintained with Defendants into trading

accounts operated by the Platforms and the Payment Processors, which were located and operated outside the United States, *see, e.g.*, Compl. ¶¶ 1, 94, 122, 132, 136, 139, 143, 156, 160.

49. Specifically, as discussed *supra* at ¶ 12, Plaintiffs bring their putative class action on behalf of all "individuals whose payments were sent to GMM . . . or any entity associated with GMM." *Id.* ¶ 164. Plaintiffs further allege that GMM is an entity "based out of Ireland" that provided payment processing for the Platforms, *id.* ¶ 94, including Glenridge Capital, an entity "owned or managed" by GMM that also "operat[ed] out of the Republic of Ireland," *id.* ¶ 122. Plaintiffs claim to have opened trading accounts with Glenridge Capital that were subsequently funded, at least in part, using bank and credit card accounts maintained by Defendants.[7] *See id.* ¶¶ 99, 131-32, 135-36, 138-39, 142-43, 155-56, 159-60. Thus, according to the Complaint, Plaintiffs funded their binary trading accounts (which were allegedly operated by an Irish company) by transferring funds held in accounts maintained by Defendants through an intermediary payment processing entity operating out of Ireland.

50. Given this substantial and direct nexus between Plaintiffs' claims and foreign banking transactions, Edge Act removal is proper. *See, e.g.*, *Ritchie Cap. Mgmt. v. JPMorgan Chase & Co.*, 532 B.R. 461, 468 (S.D.N.Y. 2014) (permitting Edge Act removal where plaintiffs alleged that the defendant bank knew, or consciously avoided learning, that its client was using bank accounts for international money laundering in furtherance of an alleged fraudulent investment scheme); *see also Pinto v. Bank One Corp.*, 2003 WL 21297300, at *6 (S.D.N.Y. June 4, 2003) (permitting Edge Act removal where plaintiff alleged that cash advances provided

---

[7] Specifically, the Complaint alleges that all but one named Plaintiff funded binary options trading accounts at Glenridge Capital via wire, debit or credit card transactions from accounts maintained by Defendants. *See generally* Compl. ¶¶ 131-45, 155-62.

by defendants enabled him to illegally gamble online, and the challenged charges reflected processing of those charges by international financial entities).

WHEREFORE, Chase respectfully removes this action from the Supreme Court of the State of New York, New York County to this Court.

| | |
|---|---|
| Dated: April 5, 2019<br>New York, New York | Respectfully submitted,<br><br>/s/ Pamela A. Miller<br><br>Pamela A. Miller<br>Jennifer B. Sokoler<br>O'MELVENY & MYERS LLP<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036<br>Telephone: (212) 326-2000<br>Facsimile: (212) 326-2061<br>pmiller@omm.com<br>jsokoler@omm.com<br><br>Elizabeth L. McKeen (*pro hac vice forthcoming*)<br>O'MELVENY & MYERS LLP<br>610 Newport Center Drive, 17th Floor<br>Newport Beach, California 92660<br>Telephone: (949) 823-6900<br>Facsimile: (949) 823-6994<br>emckeen@omm.com<br><br>*Counsel for JPMorgan Chase Bank, N.A.* |