UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

JOHN ANDERJASKA, CHUNGYAO CHEN, TEENA COLEBROOK, JOEL GRIFFITH, ART HEINEMAN, CALVIN WILLIAMS, CHARLES WITTE, on behalf of themselves and all others similarly situated,

Plaintiffs,

-v.-

BANK OF AMERICA, N.A., CAPITAL ONE, N.A., CITIBANK, N.A., J.P. MORGAN CHASE, N.A., WELLS FARGO BANK, N.A.,

Defendants.

---------------------------------------------------------------x

OPINION & ORDER

19 Civ. 3057 (LTS) (GWG)

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs brought this putative class action alleging that defendants, a group of banks, had caused them injury by negligently failing to take steps to prevent plaintiffs from falling victim to a fraudulent "binary options" scheme, by aiding and abetting the scheme, and by fraudulently concealing the scheme from plaintiffs. See Class Action Complaint, dated February 9, 2019, annexed as Exh. A to Notice of Removal, filed April 5, 2019 (Docket # 1) ("Complaint"). Plaintiffs Chungyao Chen and Calvin Williams allege that beginning in 2015 they used credit or debit cards held with defendant J.P. Morgan Chase Bank, N.A. ("Chase") to make payments to the operators of the scheme. Id. ¶¶ 136, 156. Chase has now brought a motion to compel arbitration of the claims of Chen and Williams and to stay the action pending arbitration.[1]

[1] See Notice of Motion, filed May 14, 2020 (Docket # 54); Memorandum of Law in Support, filed May 14, 2020 (Docket # 55) ("Supp. Mem."); Declaration of Brad Elias, filed May

For the following reasons, the motion to stay is granted and the motion to compel arbitration is denied.[2]

# I. BACKGROUND

## A. Procedural Background

Plaintiffs initially filed this action in state court on February 9, 2019. See Complaint. Chase removed the case to federal court on April 5, 2019 (see Notice of Removal), and plaintiffs then moved to remand the case back to state court, see Notice of Motion, filed May 14, 2019 (Docket # 25). The district court denied that motion. See Memorandum Order, filed March 30, 2020 (Docket # 46). Chase then filed the instant motion to compel arbitration, and the other defendants filed motions to dismiss. See Docket ## 52, 54, 60, 62, 64. No discovery has yet taken place.

## B. The Underlying Agreements

The following facts are taken from the complaint and from the declarations and exhibits that Chase submitted with its motion. The plaintiffs have not disputed the facts alleged in those declarations or the authenticity of the exhibits. See Opp. Mem. at 1-3.

---

14, 2020 (Docket # 56); Declaration of Prashant Singh, filed May 14, 2020 (Docket # 57) ("Singh Decl."); Declaration of William Garrett, filed May 14, 2020 (Docket # 58) ("Garrett Decl."); Declaration of Laura Deck, filed May 14, 2020 (Docket # 59) ("Deck Decl."); Memorandum of Law in Opposition, filed June 8, 2020 (Docket # 77) ("Opp. Mem."); Reply Memorandum of Law in Support, filed June 22, 2020 (Docket # 81) ("Reply Mem.").

[2] "District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." Chen-Oster v. Goldman Sachs, 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases).

Chen, a resident of California, Complaint ¶ 3, and Williams, a resident of Wisconsin, id. ¶ 7, each had deposit accounts, see Garrett Decl. ¶ 3, and credit card accounts with Chase, see Singh Decl. ¶ 1. Chen had initially opened a deposit account with Washington Mutual, but this account was converted into a Chase account in October 2009. Deck Decl. ¶ 3. Williams opened his Chase checking and saving accounts in March 2014 and closed them in September 2018. Id. ¶ 6. Chen has two credit cards with Chase, which he began using in 2005 and 2012, respectively. Singh Decl. ¶¶ 6-7. Williams had a credit card with Chase beginning in March 2014 but closed the card in March 2018. Id. ¶¶ 11-12. However, he continues to receive statements, "is responsible for an ongoing balance on the account," and "has made multiple payments." Id. ¶¶ 12, 14.

In order to maintain their deposit accounts, both Chen and Williams agreed to the terms of a deposit account agreement ("DAA"). Deck Decl. ¶ 1. Since February 2012, id. ¶ 5, the DAA has had an arbitration provision that states in relevant part:

> Arbitration. You and we agree that upon the election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court). . . . ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

Deck Decl., Exh. D at 23; id., Exh. G at 15. While the DAA gave depositors the ability to opt-out of the arbitration clause, neither Chen nor Williams did so. Garrett Decl. ¶ 7.

In order to maintain their credit card accounts, Chen and Williams agreed to the terms of a cardmember agreement ("CMA"). Singh Decl. ¶ 4. Those agreements were amended in June 2019 to include an arbitration provision. Singh Decl. ¶¶ 8, 13. The new provision states in pertinent part:

> ARBITRATION AGREEMENT . . . all disputes between you and Chase must be resolved by BINDING ARBITRATION whenever you or we choose to submit or refer a dispute to arbitration. By accepting this arbitration agreement you GIVE UP YOUR RIGHT TO GO TO COURT (except for matters that may be taken to a small claims court).

Singh Decl., Exh. 3 at 4; id., Exh. 6 at 1-2. The CMA also gave card holders the ability to opt-out of this clause, but neither Chen nor Williams did so. Singh Decl. ¶¶ 10, 14.

## II. GOVERNING LAW

Section 2 of the Federal Arbitration Act ("FAA") provides in pertinent part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." Ross v. Am. Express Co., 547 F.3d 137, 142 (2d Cir. 2008) (punctuation omitted).

The Second Circuit has held that a court considering a motion to compel arbitration of a dispute first must

> determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004).

"[U]nder the FAA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

In determining whether an issue must be arbitrated, courts apply the same standard used at summary judgment. See Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). Thus, "[i]f undisputed facts in the record required the issue of arbitrability to be resolved against the Plaintiff as a matter of law," the motion must be granted. Id.

III. DISCUSSION

Because plaintiffs do not contest that the parties agreed to arbitrate, the Court will not spend time analyzing whether, under the applicable state laws that govern each agreement at issue here, an agreement was made. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

Plaintiffs' arguments — made in a total of three pages — are directed exclusively to the second step of analysis: "the scope" of the arbitration agreements.[3] JLM Indus., Inc., 387 F.3d at 169. Plaintiffs assert that 1) the DAA arbitration clause was permissive, and since plaintiffs "chose not to elect arbitration," the agreement "cannot now retroactively nullify that selection;" 2) neither the DAA or CMA clauses apply to this case, because the plaintiffs "are not seeking to 'go to' court; they are already **in** court;" 3) Chase waived its right to arbitration by participating in this litigation; and 4) the CMA arbitration clause does not mandate arbitration because it was

[3] There is a "a general presumption that the issue of arbitrability should be resolved by the courts," and thus "the issue of arbitrability may only be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." Contec Corp. v. Remote Sol., Co., 398 F.3d 205, 208 (2d Cir. 2005) (punctuation omitted, emphasis original). Neither party questions this Court's ability to determine the scope of the arbitration clauses here, and indeed both parties' arguments assume the Court's power to do so. Even if the Court were to conclude that the question of the clauses' scope must be referred to the arbitrator to decide, that would not change disposition of Chase's motion.

"not put into effect until after the filing of this case in February 2019." Opp. Mem. at 1-3 (emphasis original). Finally, plaintiffs argue that even if the Court found that the clauses mandated arbitration of this dispute, it "would still be unable to compel arbitration," because the agreements require that arbitration take place outside this district. Id. at 3.

With respect to whether the DAA arbitration clause is permissive, the clause states, in capital letters, that disputes "must be" resolved by arbitration "when either you or we request it." Deck Decl., Exh. D at 23; id., Exh. G at 15. Thus, plaintiffs' contention — that, because they did not request arbitration, Chase is now barred from doing so — conflicts with the plain language of the agreement. Once Chase requested arbitration, the dispute between the parties "must be" resolved by arbitration.

Similarly, plaintiffs' argument that Chase lost its right to compel arbitration once the plaintiffs filed their lawsuit is contradicted by the text of both clauses. There is no limitation on the circumstances under which a party may demand arbitration or the time when a party may demand arbitration. The agreements simply state that arbitration must take place "when either you or we request it," or "whenever you or we choose" arbitration. Deck Decl., Exh. D at 23; id., Exh. G at 15; Singh Decl., Exh. 3 at 4; id., Exh. 6 at 2. Plaintiffs argue that the phrase (in the CMA) that "you give up your right to go to court" when you engage in arbitration means that because they have already filed suit in a court, the option to demand arbitration no longer applies. Opp. Mem. at 2. But in light of the broad language in the CMA that disputes "must be" resolved by arbitration "whenever" the bank chooses to arbitrate, Singh Decl., Exh. 3 at 4; id., Exh. 6 at 2, we cannot accept plaintiffs' tortured interpretation. See also Khanna v. Am. Exp. Co., 2011 WL 6382603, at *3 (S.D.N.Y. Dec. 14, 2011) (small claims exception in arbitration

agreement similar to the one in the DAA and CMA "clearly indicates" that the defendant "might choose arbitration after a plaintiff files a claim in a different court"). Moreover, the CMA elsewhere makes clear that it covers "[a]ll claims . . . whether they arose in the past, may currently exist, or may arise in the future." Singh Decl., Exh. 3 at 5; id., Exh. 6 at 2. Because the clauses are plainly intended to sweep as broadly as possible and to cover as many disputes as possible, there is no reason to read them as barring their invocation if one party files suit. See generally Dill v. JPMorgan Chase Bank, N.A., 2020 WL 4345755, at *6 (S.D.N.Y. July 29, 2020) (analyzing DAA's arbitration provisions and concluding that "the language of the DAA's arbitration provision is indisputably broad" and creates a presumption of arbitrability).

The Court also rejects plaintiffs' argument that Chase has waived the arbitration clauses by participating in litigation. Opp. Mem. at 2. Courts look to three factors to determine waiver: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 159 (2d Cir. 2010) (punctuation omitted). "[T]he key to a waiver analysis is prejudice. Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." Id. (punctuation omitted). While plaintiffs make much of the fact that Chase is making "a demand to arbitrate 15 months after the claim was filed," Opp. Mem. at 2, the delay was occasioned by plaintiffs' motion to remand the case to state court. Chase removed the case promptly to federal court, see Notice of Removal, and plaintiffs then moved to remand it back, see Motion to Remand, filed May 14, 2019 (Docket # 25). That motion was resolved against plaintiffs on March 30, 2020 (Docket # 46), and Chase

moved to compel arbitration on May 14, 2020 (Docket # 54). No litigation of the merits of the claim occurred during this period. Plaintiffs have not even argued — let alone shown — that they will suffer prejudice if arbitration is compelled. Moreover, courts commonly have refused to find a waiver merely because the motion to compel arbitration was made after the removal of the case to federal court. See, e.g., Gonder v. Dollar Tree Stores, Inc., 144 F. Supp. 3d 522, 529 (S.D.N.Y. 2015); Builders Grp. LLC v. Qwest Commc'ns Corp., 2009 WL 3170101, at *5 (S.D.N.Y. Sept. 30, 2009); see also Funderburke v. Midland Funding, L.L.C., 2013 WL 394198, at *7 (D. Kan. Feb. 1, 2013) (finding no waiver where defendant removed case and filed answer, plaintiff filed motion to remand which was withdrawn, and defendant then filed motion to compel arbitration); Briggs v. Nationstar Mortg., LLC, 2016 WL 2644902, at *1 (N.D. W.Va. May 9, 2016) (finding no waiver of arbitration right asserted after "seven months of discovery in state court," removal to federal court, and the denial of a motion to remand).

As for plaintiffs' argument concerning the applicability of the CMA arbitration clause, it is not necessary to reach this argument given that plaintiffs do not contest Chase's argument, see Supp. Mem. at 14 n.5, that the DAA clause, if it applies, would cover all claims raised by Chen and Williams in this action. In any event, we reject plaintiffs' argument that because the CMA was not put into effect until after the case was filed, the CMA arbitration clause could not apply to their claims. The CMA's arbitration clause applies to "[a]ll claims . . . whether they arose in the past, may currently exist, or may arise in the future." Singh Decl., Exh. 3 at 5; id., Exh. 6 at 2. Thus, the clause applies to the claims here. Plaintiffs assert that "Defendants' argument would create the bizarre result that parties like Defendant . . . would be able to divest courts of jurisdiction and compel arbitration 10 years into a case simply by amending an existing

agreement." Opp. Mem. at 3. But this hypothetical would be impossible to effectuate in practice given that the CMA gave plaintiffs "an opportunity to opt out in accordance with Delaware law," Reply Mem. at 3-4; see also Singh Decl., Exh. 3 at 4; id., Exh. 6 at 2 ("YOU HAVE THE RIGHT TO REJECT THIS AGREEMENT . . . ."). Thus, plaintiffs would only have to exercise that right to opt out to avoid their hypothetical "absurd outcome." Opp. Mem. at 3. In any event, the hypothetical does nothing to alter the plain meaning of the arbitration clause.

As to plaintiffs' final argument, we agree that this Court cannot compel arbitration. This is because section 4 of the FAA provides a court with the authority to compel arbitration only "within the district in which the petition for an order directing such arbitration is filed," and the agreements at issue here require that arbitration take place in plaintiffs' home states (which are outside New York) or where the parties consent. 9 U.S.C. § 4; see Deck. Decl., Exh. D at 24; id., Exh. G at 15 ("Arbitration hearings will take place in the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place."); Singh Decl., Exh. 3 at 6; id., Exh. 6 at 3 (same). As a result, we can only stay this case to allow the arbitration mandated by the agreements to occur. See Law Offices of Joseph L. Manson III v. Keiko Aoki, 2020 WL 767466, at *4 (S.D.N.Y. Jan. 3, 2020) ("Although the Second Circuit has not decided the question of whether Section 4 precludes a district court from compelling arbitration outside of its district, persuasive decisions in this Circuit have routinely held that it does.") (collecting cases). Thus, while the Court "cannot grant Defendant's motion to compel," it can issue "an order staying the litigation pending a final outcome of the arbitration." Id. (citing 9 U.S.C. § 3).

IV. CONCLUSION

For the reasons set forth above, Chase's motion to compel arbitration (Docket # 54) is denied and its motion to stay all claims of plaintiffs Chungyao Chen and Calvin Williams pending arbitration is granted.

SO ORDERED.

Dated: March 5, 2021
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge